IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LULULEMON USA, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 09 C 1560 |
| ) | |
| 108 N. STATE RETAIL, LLC, ) | Judge Virginia M. Kendall |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, lululemon, USA, Inc. ("lululemon") filed suit against 108 N. State Retail LLC ("108 N. State") alleging fraudulent inducement (Count I) and a violation of the Illinois Consumer Fraud Act ("ICFA") (Count II), and seeking declaratory relief regarding the parties rights under their lease agreement (Count III). Pursuant to Federal Rule of Civil Procedure 12(b)(6), 108 N. State moves this Court to dismiss lululemon's Complaint for failure to state a claim upon which relief can be granted. For the reasons stated, 108 N. State's Motion to Dismiss is granted.

## FACTS

The following facts are taken from the allegations in Plaintiffs' Complaint, which are accepted as true for purposes of deciding this motion to dismiss. Lululemon operates a chain of retail stores that sell yoga-associated fashion wear, athletic clothing, and yoga and athletic equipment. Compl. ¶ 2. 108 N. State is the landlord of certain real property located at 108 N. State Street, Chicago, Illinois, where it is constructing a Shopping Center (the "Shopping Center"). Compl. ¶ 4. Lululemon was approached by 108 N. State's real estate agent in 2007 to discuss the possibility of leasing retail space at the Shopping Center. Compl. ¶ 7. 108 N. State's agent represented to lululemon that Apple Computers ("Apple") had agreed to lease retail space at the

Shopping Center and that lululemon could lease space immediately next to Apple's retail store. *Id.* Lululemon claims that 108 N. State's agent was aware that the close proximity to Apple would be desirable to lululemon since the two companies share a similar customer base. *Id.* Around this time, 108 N. State's agent delivered a proposed drawing of the Shopping Center that displayed lululemon's store located next to Apple's store. *Id.*

On November 7, 2007, lululemon executed a Letter of Intent memorializing the then-existing business terms for a proposed Lease Agreement which included a Co-Tenancy clause stipulating that the deal was contingent on Apple's tenancy in the Shopping Center. Compl. ¶ 8. Lululemon contends that it executed this letter based on 108 N. State's agent's representations of Apple's tenancy, and it would not have considered leasing space in the Shopping Center absent this understanding. *Id.* On or about June 26, 2008, lululemon and 108 N. State entered into a ten (10) year lease for 2,555 square feet of retail space at the Shopping Center (the "Premises"). Compl. ¶ 10. Lululemon asserts that prior to the signing of their Lease, 108 N. State represented to lululemon that Apple had executed a Lease for retail space at the Shopping Center, and without this representation lululemon would not have entered into their Lease. *Id.* The Lease stipulates that lululemon is responsible for constructing its tenant improvements to the Premises, including the design and construction of fixtures and equipment in the space and requires that this work be completed before the anticipated Grand Opening Date, which was set in the lease for March 13, 2009, but was pushed back to September 9, 2009. Compl. ¶¶ 10, 13.

The Lease also contains a Co-Tenancy Requirement which lays out the potentially changing nature of lululemon's performance under the Lease in relation to Apple's tenancy. Compl. ¶ 12;

Compl. Ex. 3, Lease Agreement § 21.26.[1] The Co-Tenancy Requirement states that Apple by itself, and at least four (4) of nine (9) named retailers will be open for business by the Grand Opening Date. *Id*. If the Co-Tenancy Requirement is not met, then lululemon can pay a reduced rent until the Co-Tenancy Requirement is satisfied. *Id*. If the Co-Tenancy Requirement has not been met after twelve (12) months, lululemon has the option of terminating the Lease. *Id*. The Lease also contains a provision that permits 108 N. State to relocate lululemon's premises by no more than forty feet in either direction if lululemon shares a "demising wall" with Apple. Compl. ¶ 11; Compl. Ex. 3, Lease Agreement § 1.1(f). During the first week of December 2008, lululemon learned that Apple had not signed a Lease with 108 N. State and when it approached "a representative" of 108 N. State to inquire about what it had heard, the representative acknowledged that Apple would not be opening at the Shopping Center. Compl. ¶ 14. As a result, on January 23, 2009, lululemon sent 108 N. State a formal written notice of termination of the Lease. *Id*. On January 29, 2009, 108 N. State notified lululemon that it would not accept its termination of the Lease. Compl. ¶ 15.

## **STANDARD OF REVIEW**

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the

---

[1] Lululemon attached a copy of the Lease Agreement to its Complaint and therefore the Court can consider the contents of the Lease when ruling on 108 N. State's Motion to Dismiss. *See* Fed. R. Civ. P. 10 (C); *see also Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999) ("Documents attached to the complaint are incorporated into it and become part of the pleading itself."); *Tierney v. Vahle*, 304 F.3d 734, 738 (th Cir. 2002) (in deciding a motion to dismiss, the court can consider any documents incorporated or referenced in the complaint).

claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## DISCUSSION

**I. Fraudulent Inducement Claim (Count I)**

To state a claim for common law fraud in the formation of a contract, lululemon needs to allege, with particularity, that: 1) 108 N. State made a false statement of material fact, 2) 108 N. State knew that the statement was false, 3) 108 N. State intended to, and did in fact, induce lululemon to reasonably rely and act on the statement, and 4) lululemon's damages resulted from reliance on the statement. *See* Fed.R.Civ.P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . "); *see also Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 881-82 (7th Cir. 2005) (listing elements); *Redarowics v. Ohlendorf*, 441 N. E. 2d 324, 331 (Ill. 1982) (failure to plead even one of the elements requires dismissal). Under Rule 9(b), to adequately plead fraudulent inducement, lululemon must plead "the identify of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *See Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing*, 536 F.3d 663, 668 (7th Cir. 2008); *see also Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (describing Rule 9(b) particularity as "the who, what, when, where, and how: the first paragraph of any newspaper story").

Here, lululemon has failed to plead its fraudulent inducement claim with the particularity

required by Rule 9(b). Lululemon alleges that 108 N. State made three separate misrepresentations: 1) "In 2007, Defendant's real estate agent represented to lululemon that Apple had agreed to lease retail space at the Shopping Center and that lululemon could lease space immediately next to Apple's retail store," 2) that "around this time, Defendant's agent delivered to lululemon a drawing of the shopping center that specifically showed lululemon's store located next to Apple . . . ," and 3) that "before the lease was executed, Defendant represented to lululemon that Apple had executed a Lease for retail space at the Shopping Center." *See* Compl. ¶¶ 7, 9. Although lululemon has pled the content of the alleged misrepresentations, and it may have satisfied the "who" with regards to the first two alleged misrepresentations, because 108 N. State's real estate agent is identified in lululemon's Letter of Intent which is attached as an Exhibit to its Complaint, it has not adequately pled the identity of the party making the third alleged misrepresentation. Additionally, lululemon does not plead with particularity the time when the misrepresentations were made, the place in which they were made and the method in which they were made. Lululemon merely states that two of the three alleged misrepresentations were made "in 2007," and the third was made sometime "before the lease was executed." *See* Compl. ¶ 7, 9. While the Court does not read Rule 9(b) to require the provision of exact dates, giving such a vague time frame is insufficient to adequately plead when the alleged misrepresentations took place. Likewise, lululemon simply alleges that 108 N. State's Agent "represented," during discussions, that Apple agreed to lease space at the Shopping Center, that Apple had executed a lease for the rental space and that lululemon could lease space immediately next to Apple. *See* Pl. Compl. ¶ 7, 9. This, however, is insufficient; lululemon must specify the method of communication, indicating not only whether the alleged misrepresentations were oral or written but also whether they were made in person, by phone, or by some other

5

medium. *See Hologic, Inc. v. Dunworth*, 98 C 3200, 1999 WL 529564, at *2 n. 6 (N.D. Ill. July 20, 1999) (Gottschall, J.). Lastly, lululemon has completely failed to identify the place in which the alleged misrepresentations were made. As such specificity is required to state a claim for fraudulent inducement Count I of lululemon's Complaint must be dismissed. *See Uni\*-Quality Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923-24 (7th Cir. 1992) (affirming dismissal of fraudulent inducement claim where plaintiff failed to allege identity of party who made alleged misrepresentations, the time the misrepresentations were made, or the place they were made); *Graue Mill Development Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 993 (7th Cir. 1991) (affirming dismissal of fraud claim because plaintiff failed to allege with particularity the required elements of content, time, place and identity).

## II. ICFA Claim (Count II)

The ICFA prohibits the "misrepresentation or the concealment, suppression or omission of any material fact" in the conduct of trade or commerce. 815 ILCS 505/2. 108 N. State contends that lululemon lacks standing to bring a cause of action under the ICFA because it is not a "consumer" as defined under the Act and it has not alleged the requisite "consumer nexus" to state a claim under the Act. While lululemon does not have to be a consumer to state a cause of action under the IFCA, if it is not a consumer as defined by the Act, then it must plead facts that satisfy the "consumer nexus" test. *See Williams v. Electronics Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004); *see also Gelco Corp. v. Major Chevrolet, Inc.*, No. 01 C 9719, 2002 WL 31427027 (N.D. Ill. Oct. 31, 2002) ("once it is assumed that plaintiffs are not consumers, it follows that plaintiffs must plead facts under the consumer nexus test."). The ICFA defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or

6

business but for his use or that of a member of his household. *See* 815 ILCS 505/1(e). While lululemon is correct that its status as a corporation does not preclude it from being defined as a "consumer" under the Act, to be a consumer, lululemon must allege that it contracted with 108 N. State for the purchase of merchandise not for resale in the ordinary course of its trade or business. *See* 815 ILCS 505/1(c); *see also American Roller Co., LLC v. Foster-Adams Leasing, LLP*, 472 F. Supp. 2d 1019, 1022 (N.D. Ill. 2007)). Lululemon alleges that it entered into a lease agreement with 108 N. State for retail space to open one of its stores, but this does not confer consumer status on a lululemon because it does not constitute a contract to purchase merchandise not for resale in the ordinary course of business. *See Gelco Corp.*, 2002 WL 31427027 (dismissing ICFA Complaint on the grounds that entering into contracts for financing arrangements such as leases and retail agreements is not purchasing or contracting to purchase merchandise not for resale in the ordinary course of business). Furthermore, while the actual retail space itself may not be resold in the ordinary course of lululemon's business, the lease of the space is a necessary prerequisite for lululemon to engage in the sale of its product, and therefore the lease of such property does not make lululemon a "consumer" under the ICFA. *See Williams Elecs. Games*, 366 F.3d at 579 (business purchaser is not a consumer under the ICFA, because "his only use of the purchased product is as an input into the making of a product that he sells, in contrast to the individual who consumes a six-pack of beer for pleasure or nutrition rather than incorporating the beer into a product (his beer belly is not for sale)."). Moreover, the buyer or lessee of real estate *in* Illinois is *not* a "consumer" under the ICFA's statutory terms. *See* 815 ILCS 505/1(b) ("The term 'merchandise' includes any objects, wares, goods, commodities, intangibles, *real estate situated outside of the State of Illinois,* or services) (emphasis added); *see also Scarsdale Builders v. Ryland Group*, 911 F. Supp 337, 339

7

(N.D. Ill. 1996).

Because lululemon has failed to plead facts that qualify it as a "consumer" under the ICFA, to bring a claim under the Act, it must plead facts under the "consumer nexus" test. *See Gelco Corp*, 2002 WL 31427027, at *10. To do this, lululemon must allege that 108 N. State's fraudulent conduct involves trade practices directed to the market generally or otherwise relates to consumer protection issues. *See Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996). Lululemon does not allege any misrepresentation to its actual or prospective customers and its Complaint fails to allege a nexus between 108 N. State's conduct and consumer protection concerns. Therefore, because lululemon has not plead facts that suggest that it is a "consumer" and has not pled sufficient facts to meet the consumer nexus test, it cannot maintain a cause of action under the ICFA.

Additionally, even if lululemon had pled adequate facts to establish standing to bring a claim under the ICFA, lululemon's Complaint fails to plead the elements of its claim with the required particularity as mandated by Rule 9(b). To state a claim for a violation of the Act, lululemon must allege with particularity that: 1) 108 N. State undertook a deceptive act or practice, 2) 108 N. State intended that lululemon rely on the deception, 3) the deception occurred in the course of trade and commerce, 4) actual damage to lululemon occurred, and 5) the damage complained of was proximately caused by the deception. *See Davis*, 396 F.3d at 883. A complaint alleging a violation of the ICFA must be pleaded with the same particularity and specificity under Rule 9(b) as that required for common law fraud. *See id*; *see also IWOI, LLC v. Monaco Coach Corp.*, 581 F.Supp.2d 994, 1002 (N.D. Ill. 2008) ("[A] plaintiff must state the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which

8

the misrepresentation was communicated.") Here, for the reasons mentioned in connection with the Court's analysis of lululemon's fraudulent inducement claim, lululemon has failed to allege with particularity the necessary elements to state a claim for a violation of the ICFA.[2]

### III. Declaratory Judgment (Count III)

In Count III of its Complaint, lululemon seeks a declaration from the Court that: 1) the co-tenancy requirement of the Lease has not been, and will not be, satisfied, 2) that lululemon's termination of the Lease was valid and the Lease is no longer in force, and 3) that lululemon is not obligated to take possession or occupy the Premises. Under Illinois law, contracts are interpreted to effectuate the parties' intent as expressed in the agreement. *See Mo. Pac. R. Co. v. Am Re-Ins. Co.*, 676 N.E. 2d 965, 968 (Ill. App. Ct. 1996) (to construe the meaning of a contract, courts first look to the contract's own language, giving the terms their plan and ordinary meaning). If the language in the contract is unambiguous, it should be given its plain and ordinary meaning and parol or extrinsic evidence is inadmissible to explain or vary the clear and unambiguous terms of the written agreement. *Owens v. McKermott, Will & Emery*, 736 N.E. 2d 145, 151 (Ill. App. Ct. 2000). If any allegations in lululemon's Complaint conflict with the parties lease agreement, the information in the contract trumps lululemon's assertions in its Complaint. *See Whirlool Financial Corp. v. GN Holdings, Inc.*, 873 F.Supp. 111, 123 (N.D. Ill. 1995).

Here, lululemon asserts that it was entitled to terminate the Lease because 108 N. State

---

[2] Lululemon attempts to sidestep the heightened pleading requirement of Rule 9(b) by claiming that "to the extent that the acts of Defendant constitute unfair conduct under the [ICFA], such pleading particularity isn't required in Federal Court." *See* Pl. Resp. at 9. Allegations of an unfair trade practice, however, are entirely absent from lululemon's Complaint; it only alleges a fraudulent practice under the ICFA which requires a heightened pleading standard. *See Windy City Metal Fabricators & Supply, Incorp. v. CIT Technology Financing Svcs.*, 536 F.3d 663, 670 (7th Cir. 2008) (unlike cause of action for fraud under the ICFA, a cause of action for unfair practices must only meet the notice pleading standard of Rule 8(a), not the particularity requirement of Rule 9(b).)

9

breached the Lease's co-tenancy requirement. In support of this argument, lululemon contends that Apple's co-tenancy was a primary express condition of the Lease and 108 N. State's failure to secure Apple as a tenant permits it to terminate the Lease. The plain language of the co-tenancy requirement (section 21.26) is clear and unambiguous, however, and it does not support lululemon's argument that 108 N. State breached the terms of the Lease by not securing Apple as a tenant. The Lease's co-tenancy requirement states that "the tenant commonly known as Apple and at least (4) of the Co-Tenants (as defined herein below) [be] open for business to the public in the Retail Development on the Commencement Date[.]" *See* Compl. Ex. 3, Lease Agreement § 21.26. The Lease also provides lululemon's only remedy in the event that 108 N. State fails to meet the co-tenancy requirement:

> Notwithstanding anything in this Lease to the contrary and so long as Tenant has not been in default under this Lease beyond expiration of any applicable notice and cure period, in the event of a failure of the Co-Tenant Requirement (as defined below), Tenant shall have *as its sole and exclusive remedy, the right to pay in lieu of Fixed Rent, a substitute rental in the amount of six percent (6%) of Gross Sales per Lease Year until the earlier of (i) the date on which the Co-Tenant Requirement is satisfied, or (ii) the date that is twelve (12) months following the date on which Tenant commenced paying Substitute Rental*.
>
> If Tenant is permitted to pay Substitute Rental for a period of twelve (12) consecutive months, upon expiration of the twelve (12) consecutive month period, Tenant shall either: (i) immediately commence paying full Fixed Rent payable under this Lease as if there is no failure of the Co-Tenant Requirement; or (ii) terminate this Lease by delivering written notice of its election to terminate . . . .

Compl. Ex. 3, Lease Agreement § 21.26. Under the plain language of the Lease, 108 N. State has not yet breached its co-tenancy requirement with lululemon because the "Commencement Date" has not come and gone without "Apple being open for business to the public in the Retail Development."

10

Furthermore, if 108 N. State does breach the co-tenancy requirement in the future, lululemon has contracted away its rights with respect to its available remedies. Under the plain terms of the contract, lululemon is permitted to validly terminate its Lease with 108 N. State but not until twelve months after the Shopping Center's Commencement Date, and only if 108 N. State has failed to comply with the terms of the co-tenancy requirement during the entire twelve month period. No where in the co-tenancy requirement section of the Lease, or anywhere in the Lease for that matter, does it state that lululemon can terminate the Lease if 108 N. State does not secure Apple as a tenant by a specific date or does not secure Apple as a tenant at all. The contract is silent with respect to the requirement that Apple be a tenant and contrary to lululemon's contention Apple's status as a tenant is not an express condition of the parties' Lease Agreement. The Lease's failure to address a requirement that 108 N. State secure Apple as a tenant or a remedy if it fails to do so does not render the language of the co-tenancy requirement ambiguous. *See Camico Mutual Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007) ("An ambiguity exists [] if the contract's language is susceptible to more than one interpretation."). Furthermore, the parties Lease contains an explicit integration clause and if a contract is a complete expression, or total integration, the parol evidence rule precludes the Court from looking outside the contract. *See Westchester Surplus Lines Ins. Co. v. Stonitsch Const., Inc.*, 572 F.Supp. 2d 946, 951 (N.D. Ill. 2008) (St. Eve, J.) Because the plain language of the parties contract prevents lululemon from asserting that as of January 23, 2009, the date on which lululemon attempted to terminate the Lease, 108 N. State breached the co- tenancy requirement of the Lease and because the Lease provides for lululemon's sole remedy if and when 108 N. State breaches the co-tenancy requirement, the Court cannot declare that 108 N. State has not and can not satisfy the co-tenancy requirement and that lululemon's termination of the lease was

valid. Therefore, Count III of lululemon's Complaint is dismissed.

## **CONCLUSION AND ORDER**

For the reasons stated, 108 N. State's Motion to Dismiss is granted. Count III is dismissed with prejudice. Counts I and II are dismissed without prejudice with leave to refile within ten days of this Order.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: June 17, 2009